STATE *vs.* CHARLES PAPA.

JUNE 12, 1911.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *New Trial.  Full, Fair, and Impartial Trial.*

In a motion for a new trial filed under Gen. Laws, 1909, cap. 298, § 12, in the Superior Court, claims that petitioner did not have a fair and impartial trial, because of the instruction of the court to the jury and because the court permitted the attorney general to make certain statements to the jury, are inappropriate in such a motion, since "error of law occurring at the trial," is expressly excluded from the reasons for which a new trial may be granted under said section, the exclusive remedy in a case where a trial has not been full, fair, and impartial being by a petition to the Supreme Court for a new trial under Gen. Laws, 1909, cap. 297, § 2.

(2)  *Indictment.  Dangerous Weapon.  Proof.*

Where an indictment charges an assault with a dangerous weapon, proof of the dangerous character of the wounds inflicted by means of the knife in the hands of the defendant, is sufficient without proof establishing the size or character of the knife.

(3)  *Verdict Against Law.*

Where it is not shown that the jury disregarded the law as given them by the court, it is to be assumed that the verdict is in accordance with the instructions given.

(4)  *New Trial.  Errors of Law.*

Where there is nothing in the evidence to indicate that the jury were not warranted in arriving at the conclusion which they did, a motion for a new trial is properly denied by the justice of the Superior Court, who is not permitted to pass upon his own errors of law, if any there be.

(5)  *Right of Counsel to Interview Witness under Summons.*

The statement of the presiding justice to the jury that "it is unfortunate that the defendant's attorney should feel under any obligation to send for one

of the witnesses for the State." "That is an unfortunate circumstance, to say the least. The State's witnesses should be left alone by the defendant," is error prejudicial to the rights of the defendant.

Witnesses are not parties and may be summoned by either side of a controversy, and counsel not only have the right, but owe the duty to clients to interview witnesses of an occurrence in their investigation of the case, although such witnesses may be under summons at the time.

(6)   *Prima Facie Evidence of Guilt.   Prejudicial Error.   New Trial.*

While evidence of the flight of a defendant subsequent to the commission of an offence, is a circumstance which the jury is entitled to consider as an indication of the consciousness of guilt on his part, it is the province of the jury to determine the weight of this species of evidence, and an instruction to the jury that such fact of flight by the defendant made a *prima facie* case indicating guilt on his part, is prejudicial error.

INDICTMENT charging an assault with a dangerous weapon. Heard on exceptions of defendant, and certain exceptions sustained.

DUBOIS, C. J.   The defendant was indicted for an assault with a dangerous weapon, to wit, a knife.   The case was tried in the Superior Court and resulted in a verdict of guilty with recommendation of mercy.   The defendant filed his motion for a new trial, which motion was heard and denied by the justice of the Superior Court who presided at said trial.   The case is now before this court for the consideration of the defendant's exceptions, the truth of which was established by us upon his petition brought for that purpose, viz.:   The exception taken to the refusal of the Superior Court to grant the defendant's motion for a new trial, and the following exceptions, numbered by the defendant I, II, III, IV, and V, in his bill of exceptions, to wit:

"I.   To that part of the charge of the Justice presiding at the trial of said cause which stated that the attorney for the defendant knew at the time of the interview with the witness John Malone that he had been summoned in behalf of the State, on the ground that the evidence shows that the boy was summoned by the State on Monday night;   on the ground that the attorney for the defendant notified the defendant in this case on Monday night to bring the boy to his office on Tuesday morning and that there is nothing in the evidence to show that the attorney for the defendant knew at the time

that the interview was held in his office that the boy was under summons by the State. Transcript, page 181.

"II. To that part of the charge of the Justice presiding at the trial of said cause which suggests that the fleeing of the defendant under the circumstances in this case is *prima facie* evidence of his guilt. Transcript, page 182.

"III. To that part of the charge of the Justice presiding at the trial of said cause which suggests that the evidence which the attorney for the defendant gave to the effect that he was notified by the defendant that John Malone was a witness in this case is susceptible of the construction which His Honor has put upon it, that said attorney for the defendant knew that said witness had been summoned by the State as a witness in this case. Transcript, page 184.

"IV. To that part of the charge of the Justice presiding at the trial of said cause as set forth in the following language:— 'No, If your Honor please I will take now an exception to Your Honor's last statement that I knew he was to be a witness on the ground there is no testimony in this case that I knew he was to be a witness, that my testimony was that he was a witness. He was a witness in the sense he was a witness of the affair, not that he was to be a witness summoned either by himself or the State. And, further, there is nothing in the testimony upon which may be predicated the charge of Your Honor that I knew of his being summoned by the State, because there is testimony in the record that an arrangement was made by me that he was to appear at my office whereby to come to this Court at nine o'clock Wednesday morning, an arrangement entered into on Tuesday morning when he was to come to my office.'

"V. To the sustaining by the Justice presiding at the trial of said cause of the objection of the Assistant Attorney General for the State to the thirteenth question of counsel for the defendant asked the defendant as shown on page 149 of the transcript."

The defendant's motion for a new trial reads as follows: "And now comes the respondent in the above entitled cause within seven days after verdict therein and moves that a new

trial be granted him and for grounds of said motion, upon which said grounds he hereby declares he relies, he says:

"I. That said respondent did not have a fair and impartial trial in that the prosecuting attorney notwithstanding the objection of said respondent was allowed by the justice presiding at the trial of said cause to state to the jury that it was improper for the respondent by his attorney to interview, confer or have any intercourse with a witness summoned by the State relative to the testimony to be offered by said witness at said trial to the manifest prejudice of said respondent before said jury.

"II. That said respondent did not have a fair and impartial trial in that the Justice presiding at the trial of said cause instructed the jury that the State's witnesses had been approached by the respondent by his attorney to learn what they were to testify to and that the State's witnesses should be left alone by the defendant and should not be approached by him to learn what they are to testify to, to the manifest prejudice of said respondent before said jury.

"III. That the record in this cause shows a variance between the indictment and the proof in that the indictment charges assault with a dangerous weapon while there is no proof that establishes the size or character of the pocket knife in the hands of the respondent as a dangerous weapon.

"IV. That said verdict is against the law.

"V. That said verdict is against the law and the evidence and the weight thereof.

"Wherefore the said respondent moves that a new trial be granted him."

The motion for a new trial was filed under the provisions of Gen. Laws, 1909, cap. 298, § 12, which provides: "Within seven days after verdict any person or party entitled to except in a cause or proceeding tried by a jury in the Superior Court may file in the office of the clerk of said court a motion for a new trial for any reason for which a new trial is usually granted at common law, other than error of law occurring at the trial. Such motion shall state the grounds relied upon in its support. The court, after hearing the parties, may set aside the verdict

and order a new trial, with or without terms. A verdict shall not be set aside as excessive by the supreme or superior court until the prevailing party has been given opportunity to remit so much thereof as the court adjudges excessive." It will be noticed that "error of law occurring at the trial," is excluded from the reasons for which a new trial may be granted upon such a motion. Also the claim made by the defendant in the first and second grounds of his motion, that he did not have a fair and impartial trial of the case in the Superior Court, are inappropriate in such a motion. If the defendant did not have a fair and impartial trial for the reasons given in the motion it was on account of error of law occurring at the trial.

Moreover, another remedy is provided by Gen. Laws, 1909, cap. 297, § 2, in the following terms: "A party or garnishee in any action or proceeding in the Superior Court in which a trial has been had which was not full, fair, and impartial, may at any time within one year after verdict or decision petition the supreme court for a new trial; and the supreme court may, with or without terms, order a new trial in the superior court." This remedy is exclusive and therefore there is no necessity for further consideration of the first and second grounds of said motion.

The third ground thereof is also untenable, there was ample proof of the dangerous character of the wounds inflicted by means of the knife in the hands of the respondent. There could hardly be a fairer test than that, which speaks of results rather than theories or speculations, of facts instead of opinions.

As to the fourth ground, the defendant has not suggested, and we fail to find, wherein the jury disregarded the law as it was given to them by the justice of the Superior Court who presided at the trial, therefore it is to be assumed that the verdict is in accordance with the instructions given.

Concerning the fifth, and last ground, that the verdict was against the evidence. At the trial, the defendant admitted the commission of the assault with a knife, his subsequent flight, and his plea of guilty to a similar charge in the district court, but he claimed that what he did was done in defending

himself from an unprovoked assault made upon him and begun by the prosecutor. In this condition of the evidence it was the duty of the jury to ascertain the truth if possible, and there is nothing in the transcript of testimony to indicate that the jury were not warranted in arriving at the conclusion which they did. The motion for a new trial was therefore properly denied by the justice of the Superior Court, who is not permitted by the statute to pass upon his own errors of law, if any there be. If (4) the presiding justice at the trial did err in permitting the prosecuting attorney, against the objection of the respondent, to make improper and prejudicial remarks to the jury, it was the duty of the respondent to take exception to the ruling of the court complained of in order that the same might be brought to the attention of this court in an orderly manner. So far as we are able to ascertain from an inspection of the transcript no such exception was taken and the matters contained in the first ground of the motion for a new trial are not now before us.

(5) We pass now to the consideration of the exceptions that were taken. The first exception has relation to the following portion of the charge of the justice, presiding, to the jury: "The State has also brought this little boy in here, John Malone, if that is his name. You have heard his statement here and you have heard what occurred in Mr. Sullivan's office. I will say, Gentlemen, in regard to that matter, it is unfortunate that the defendant's attorney should feel under any obligation to send for one of the witnesses for the State, who has been summoned by the State and that he knows has been summoned by the State, and summon him to his office and there tell him what the defendant has said were the facts of the case and ask him if that is not true, and have the boy say it is true; then tell the boy he must come or he should come into court and tell the story in that way. That is an unfortunate circumstance, to say the least. The State's witnesses should be left alone by the defendant, they should not be approached by the defendant with any object of influencing their testimony in any way. You have heard the boy's story here as to just what occurred in Mr. Sullivan's office, and you have heard Mr. Sullivan's

story, and you have heard the story of the others who claim to have been present, and who have given their version of that affair.   You will determine what the facts are for yourself." We are of the opinion that this portion of the charge contains error prejudicial to the rights of the defendant.   The attorney for the defendant not only had the right, but it was his plain duty towards his client, to fully investigate the case and to interview and examine as many as possible of the eye-witnesses to the assault in question, together with any other persons who might be able to assist him in ascertaining the truth concerning the event in controversy.   Witnesses are not parties and should not be partisans; they do not belong to either side of the controversy; they may be summoned by one or the other or both, but are not retained by either.   It would be a most unfortunate condition of affairs if a party to a suit, civil or criminal, should be permitted to monopolize the sources of evidence applicable to the case to use or not as might be deemed most advantageous. Such a proceeding in a criminal case would violate the provisions of the Constitution of this State, Article I, section 10, which provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury; to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining them in his favor, to have the assistance of counsel in his defence, and shall be at liberty to speak for himself; nor shall he be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land."   The defendant, therefore, has the constitutional right to have compulsory process for obtaining witnesses to testify in his behalf, he has also the right either personally or by attorney to ascertain what their testimony will be.   But in the interviews with and examination of witnesses, out of court, and before the trial of the case, the examiner, whoever he may be, layman or lawyer, must exercise the utmost care and caution to extract and not to inject information; and by all means to resist the temptation to influence or bias the testimony of the witnesses.   If in any case the claim should be made that a

party has misconducted himself in this respect the matter should be left to the determination of the jury as affecting the question of his guilt or innocence of the crime charged. If it was charged that an attorney had been guilty of such impropriety, it would constitute cause for the disciplinary action of the court and should not be submitted to the jury unless it appeared that it was done with the knowledge and consent of his client in which case the matter should be left to the determination of the jury. The court, however, should refrain from the use of expressions which are likely to give the jury the impression that the court has prejudged the matter. The expressions of the court in this case, above quoted, beginning "it is unfortunate that the defendant's attorney should feel under any obligation to send for one of the witnesses for the State," and ending: "That is an unfortunate circumstance to say the least," are subject to this criticism. This exception must, therefore, be sustained.

(6)     The second exception is taken to the following charge of the trial court: "Now, there was some other evidence here. There has been one or two Italian women who have told what they know about the matter; but among other things the defendant himself has been upon the stand, and he says that he did knock this man down, struck him with his fists, and that he did do the cutting, and he says that immediately after the party who claims to have been assaulted was struck by his fist and was cut, that he fled, that he went to his house, got his cap, took his bicycle and left his home and left the State of Rhode Island, and was gone until about the time of his arrest, when he returned, some twenty days or so after the occurrence. I will say to you, Gentlemen, that the very fact that the defendant, under those circumstances which he has related here, saw fit to flee from the State, makes a *prima facie* case which indicates guilt on his part." And later, in the course of his charge to the jury, the judge added the following remarks on the same subject: "and that he at that time, as soon as the affray between him and Aramino was over, he immediately left as he has told you here. But, Gentlemen, as I have

already called to your attention, the very fact that he ran away is a circumstance which indicates guilt if not explained by him to your satisfaction." There is no question but that evidence of the conduct of the defendant subsequent to the commission of an offence is always admissible; hence evidence of his flight is competent on the question of his guilt. It is a circumstance which the jury are entitled to consider as an indication of the consciousness of guilt on the part of the defendant. It is a proverb that "The wicked flee when no man pursueth; but the righteous are bold as a lion." However, it is the province of the jury to determine the weight of this species of evidence. In the case of *State* v. *Beswick*, 13 R. I. 211, this court held that an act of the legislature making certain recited circumstances *prima facie* evidence against an accused, was unconstitutional and void, in depriving the accused of the protection of the common law principle that every person is to be presumed innocent until he is proved guilty, as recognized in the Constitution of R. I. Art. I, § 14, and in violating the provision that an accused shall not "be deprived of life, liberty, or property, unless by the judgment of his peers or the law of the land." *Ibid*, Art. I, § 10. The court has no more power in the premises than the legislature, and the instructions given in regard to flight of the accused are subject to the same criticism. For these reasons the exception is sustained.

The third and fourth exceptions are also sustained for the reasons given for sustaining the first exception.

The fifth exception relates to a ruling of the court sustaining the State's objection to the following question put by counsel for the defendant to him: "Q. 13. Are you a married man or a single man?" The court properly held it to be immaterial and unimportant and the exception is without merit, and is therefore overruled.

As certain of the defendant's exceptions have been sustained, as aforesaid, the case is remitted to the Superior Court for a new trial.

*William B. Greenough, Attorney-General, Harry P. Cross, Second Assistant Attorney-General*, for State.

*Edward M. Sullivan, Francis E. Sullivan*, for defendant.